**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**DAWN ADAMS,**

                Plaintiff,

v.                                       Civil Action No. 2:17-cv-00527-RGD-LRL

**APPLIED BUSINESS SERVICES, INC.**
**d/b/a SECURITY COLLECTION AGENCY**

                Defendant.

**MEMORANDUM IN RESPONSE TO THE**
**COURT'S ORDER DATED SEPTEMBER 6, 2018**

        Plaintiff, Dawn Adams, by counsel, submits this Memorandum in response to the Court's

Order dated September 6, 2018 (ECF No. 31) (the "September 6 Order") directing Plaintiff to

file a memorandum with the Court which addresses the following:

        A.        The steps taken by Plaintiff since the date of the September 6 Order to contact the

remaining Defendant, Applied Business Services, Inc. d/b/a Security Collection Agency

("SCA") and explore alternative dispute resolution with SCA;

        B.        Legal and factual support for Plaintiff's position that SCA was properly served

and that the Court can exercise personal jurisdiction over SCA;

        C.        Plaintiff's position regarding the type and amount of damages for which SCA can

be held individually liable in this action given that Plaintiff has previously settled her claims

against Equifax in the same action, which claims arose from a similar set of transactions and

occurrences and similar harms as those alleged with respect to SCA; and

        D.        Whether Plaintiff is entitled to a jury trial on damages in the event this Court

enters default judgment against SCA as to liability.

## FACTUAL AND PROCEDURAL BACKGROUND

This case is brought against SCA pursuant to the Federal Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, *et seq.* and for defamation under Virginia law. SCA is a debt collection company doing business in the Commonwealth of Virginia. Compl. ¶ 4. In this case, Security Collection falsely reported to Equifax Information Services, Inc. ("Equifax") that the Plaintiff had a collection account for charges due and owing to Children's Hospital of the King's Daughters, Inc. ("CHKD"). *Id.* ¶ 15. SCA failed to remove the false collection status after Plaintiff submitted multiple disputes to Equifax. *Id.* ¶ 16. Accordingly, Plaintiff alleged that Security Collection violated three separate sections of the FCRA: (1) 15 U.S.C. § 1681s-2(b)(1)(A), for failing to fully and properly investigate Adams' disputes; (2) 15 U.S.C. § 1681s-2(b)(1)(B), for failing to review all relevant information provided by Equifax; and (3) 15 U.S.C. § 1681s-2(b)(1)(C) and (D), by reporting information within Plaintiff's credit file with Equifax without also including a notation that the charges were disputed and by failing to correctly report results of an accurate investigation to Equifax and to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information. *Id.* ¶¶ 50, 72, 82.

Plaintiff filed her Complaint on October 6, 2017. ECF No. 1. On October 11, 2017, Plaintiff, by counsel, mailed the requisite documents to the Secretary of the Commonwealth of Virginia (the "Secretary") to effect service on SCA pursuant to Va. Code § 8.01-329. Oct. 11, 2017 Letter to Secretary, attached hereto as **Exhibit A**. SCA was served on October 13, 2017, through the Secretary, who mailed the following to SCA by Certified mail: (1) copy of service affidavit; (2) summons directed to SCA; (3) civil motions procedures attachment; and (4) the Complaint (collectively, the "Service Package"). ECF No. 4. On October 19, 2017, the Secretary filed its certificate of compliance for service on SCA with the Clerk in this Court. *Id.* On or about

November 13, 2017, Plaintiff's counsel requested additional confirmation from the Secretary regarding service on SCA, and the Secretary sent that confirmation by facsimile. Nov. 13, 2017 Facsimile from Secretary, attached hereto as **Exhibit B**. Following entry of the September 6 Order, Plaintiff's counsel sought confirmation of the Certified mail tracking number (the "Tracking Number") for the Service Package from the Secretary. Kari Ellis ("Ms. Ellis") of the Service of Process Division of the Secretary provided the Tracking Number to Plaintiff's counsel by e-mail. Sept. 7, 2018 E-mail from Ms. Ellis, attached hereto as **Exhibit C**. USPS Tracking Information, attached hereto as **Exhibit D**. **Exhibit D** shows that the Service Package was delivered to Security Collection's "post-office address" on October 20, 2017.[1] Va. Code § 8.01-329(C)(2). SCA failed to respond, and the Plaintiff requested the Clerk to enter default as to SCA, which was entered on November 14, 2017. ECF Nos. 8-9. On November 13, 2017, Plaintiff's counsel served SCA with the Request for Entry of Default by First-class mail at two addresses. ECF No. 8. On January 10, 2018, Plaintiff filed a Motion for Default Judgment as to Liability Against SCA (the "Default Motion") and a Memorandum in Support of the Default Motion (the "Default Memorandum"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. ECF Nos. 11-12. Plaintiff's counsel served SCA by First-class mail, at two addresses, with the Default Motion and Default Memorandum on January 10, 2018. ECF Nos. 11-12. Plaintiff's counsel also served SCA with the Default Motion and Default Memorandum by Certified mail on January 11, 2018. Copy of Jan. 11, 2018 Service Package and Signed Return-Receipt, attached hereto as **Exhibit E**. On February 21, 2018, the Court entered an Order staying the Default Motion. ECF No. 14.

---

[1] Unfortunately, the return receipt for the Service Package has not made it back to the office of Plaintiff's counsel.

On September 5, 2018, Plaintiff and Equifax Information Services, LLC ("Equifax") filed a Joint Stipulation of Dismissal with respect to all claims against Equifax. ECF No. 30. Equifax was therefore terminated as a party on September 6, 2018.

Plaintiff's counsel appeared before the Court on September 6, 2018 for a final pretrial conference. As instructed in the September 6 Order, Plaintiff's counsel has endeavored to contact SCA regarding this case and explore alternative means of resolving Plaintiff's claims against SCA. Declaration Regarding Efforts to Contact Defendant Applied Business Services, Inc. d/b/a Security Collection Agency and Explore Alternative Dispute Resolution with Defendant, attached hereto as **Exhibit F**.

## DISCUSSION AND ARGUMENT

### A.  **This Court Can Exercise Personal Jurisdiction over Security Collections in this Action**

Before this Court can render default judgment, it must have both subject-matter jurisdiction and personal jurisdiction over the defaulting party, and venue must be proper. In this case, neither subject-matter jurisdiction nor venue are disputed, and the Court has not requested briefing on subject-matter jurisdiction or venue. As set forth below, the Court has ample basis to exercise personal jurisdiction over SCA.

SCA is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business in North Carolina. Business Information for SCA from North Carolina Secretary of State website, attached hereto as **Exhibit G**. Plaintiff is a natural person who is a full-time resident and domiciliary of the Commonwealth of Virginia.

This Court has personal jurisdiction over SCA because the standards of due process and Virginia's long-arm statute are satisfied. Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Virginia's long-arm statute, Virginia Code § 8.01-328.1, "extends the jurisdiction of its courts as far as federal due process permits." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002) (citing Va. Code § 8.01-328.1; *John G. Kolbe, Inc. v. Chromodern Chair Co.*, 211 Va. 736, 180 S.E.2d 664, 667 (1971). Accordingly, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). The analysis as to SCA requires either specific jurisdiction "based on conduct connected to the suit" or general jurisdiction based on "continuous and systematic" activities in Virginia. *Tire Eng'g & Distrib. LLC v. Shandong Linglong Rubber Co.,* 682 F.3d 292, 301 (4th Cir. 2012). In this case, specific jurisdiction exists with respect to SCA.[2]

Although SCA is a North Carolina corporation, it is subject to personal jurisdiction of this court because it has "minimum contacts" such that it "should reasonably anticipate being hauled into court" in Virginia. *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC* 261 F.Supp.2d 483, 491 (E.D. Va. 2003) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). By its own admission, SCA serves a "large base of clientele in the southeastern United States, including organizations in . . . Virginia." *Service at SCA*, available at http://www.abs-sca.com/services.html (last accessed on Sept. 16, 2018), attached hereto as **Exhibit H.** CHKD is exclusively located in Virginia. *CHKD Locations Map*, available at http://www.chkd.org/uploadedFiles/Documents/Medical_Professionals/HealthCenterMap.pdf

---

[2] General jurisdiction may also exist with respect to SCA because it appears to have "continuous and systematic" debt collection activities in Virginia.

(last accessed on Sept. 16, 2018), attached hereto as **Exhibit I.** CHKD's health centers are primarily located in Hampton Roads. Ex. I.

Federal courts have established a three-part test to evaluate whether specific personal jurisdiction is appropriate: "(1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) assertion of personal jurisdiction is reasonable and fair." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,* 566 F.3d 1012, 1018 (Fed. Cir. 2009) (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1363 (Fed. Cir. 2006)). SCA, in contracting with a Hampton Roads based corporation, where its exclusive job was to collect medical debt from Virginia residents or arising out of treatment in Virginia, demonstrated an intent to purposefully avail itself of the privileges and benefits of conducting business under Virginia law and with Virginia residents within the meaning of *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). Moreover, all of Plaintiff's claims against SCA arise out of activities directed at her in Virginia based on purported medical treatment provided in Virginia by CHKD. Accordingly, specific personal jurisdiction over SCA by this court is appropriate.

Further, SCA engaged and continues to engage in long term business in the Commonwealth of Virginia because it contracts with Virginia clients for collection services. SCA's conduct as it relates to Virginia residents concerns the interests of Virginia, mainly protecting Virginia residents from abusive debt collection practices. *See Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1412 (Fed. Cir 2009) (stating that the interests of a forum state is a factor in evaluating whether a defendant has made minimum contacts with the forum state). Plaintiff's claim against SCA is entirely centered around SCA's conduct as a debt collector working on behalf of a Virginia corporation. SCA, in working on behalf of a Virginia

corporation had the knowledge that many of the consumers it would collect from were residents of Virginia and sent mail to Plaintiff in Virginia. SCA's conduct shows that it "contemplated using []Virginia law…to its advantage." *Richardson v. William Sneider & Assocs., LLC*, No. 4:12CV25, 2012 U.S. Dist. LEXIS 114630, at *14 (E.D. Va. July 24, 2012).

In summary, SCA's contacts with Virginia are more than sufficient to satisfy the three-part test outlined in *Autogenomics, Inc.* As a debt collector, SCA purposefully targeted its activities at Virginia residents because it chose to contract with a Virginia corporation, the Plaintiff's claim directly arose out of SCA's debt collection practices in Virginia, and SCA should reasonably expect to be haled into court in Virginia due to its substantive business practices in Virginia. No notion of fair play would be offended if SCA were to be subject to this Court's jurisdiction. Therefore, Plaintiff respectfully submits that the Court should exercise personal jurisdiction over SCA.

**B.  Security Collections Was Properly Served in this Action**

Plaintiff strictly followed the procedures set forth in Va. Code § 8.01-329 to effect service of the Complaint and Summons on SCA. Additionally, tracking information from the United States Postal Service ("USPS") establishes delivery of the Complaint and Summons to the "post-office address" for SCA. Ex. D.

"Before the Court can render default judgment, it must be satisfied that a defaulting party has been properly served. As a general rule, a defendant must be served with the summons and complaint filed with a federal court….However, various avenues exist to serve a defendant." *Bd. of Trs. of the Sheet Metal Workers' Nat'l Pension Fund v. CRO Sheet Metal Corp.*, Civil Action No. 1:18-cv-574 (LMB/TCB), 2018 U.S. Dist. LEXIS 150463, at *5 (E.D. Va. Aug. 13, 2018) (internal citation omitted). "In serving process to a corporation, a party may deliver a copy of the

complaint and a copy of the summons to any agent authorized by law to receive service of process." *Id.* Additionally, service may be effectuated by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under Virginia law, to properly serve a nonresident of Virginia, the Plaintiff may make service of process on the nonresident party on the Secretary and file an affidavit with the court providing the last known address of that party. Virginia Code § 8.01-329.

In this case, SCA is a nonresident of Virginia and does not have a registered agent in Virginia. SCA is, however, registered with North Carolina's Secretary of State. Ex. G. Accordingly, the Secretary was the proper agent authorized by law to accept service for SCA. *Id.* Plaintiff has provided extensive documentation detailing her service of process on SCA. Exs. A-D. This documentation is more than sufficient to establish proper service on SCA. *Elite Plastic Surgery, LLC v. Huey*, Civil Action No. 1:18-cv-409 (TSE/TCB), 2018 U.S. Dist. LEXIS 127886, at *4-5 (E.D. Va. July 2, 2018) (holding that the nonresident defendant was properly served via the Secretary of the Commonwealth.) Plaintiff's service of process was sent to the correct party and address and in the correct method under Virginia law. *See Equipment Financial Services, Inc. v. Traverse Computer Brokers*, 973 F.2d 345, 347 (4th Cir. 1992) (holding that compliance with statutory provisions governing service on the Secretary rendered service of process effective even though service package was returned by the post office marked "undeliverable"). *Equipment Financial Services* establishes that when a Plaintiff takes the correct steps under Virginia law to serve process on a nonresident Defendant, such service is *per se* valid. In this case, Plaintiff has properly served SCA, and USPS tracking information establishes delivery of the Summons and Complaint to SCA.

**C. Overview of the Type and Amount of Damages for which SCA Can Be Held Individually Liable in this Action**

Plaintiff's settlement with Equifax has no bearing on the availability of damages against SCA in this action for three reasons: (1) the FCRA provides for no right of offset or contribution that could benefit SCA; (2) the release in the settlement agreement with Equifax expressly excludes SCA; and (3) the "one satisfaction rule" is inapplicable to Plaintiff's claims against SCA.

It is beyond cavil that "[t]here is no right to offset or contribution under the FCRA." *Brim v. Midland Credit Mgmt.*, 795 F. Supp. 2d 1255, 1266 (N.D. Ala. 2011); *see also Nelson v. Equifax Information Services, LLC*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal.2007) (no equitable offset available under the FCRA); *Kay v. First Continental Trading, Inc.*, 966 F. Supp. 753, 754-55 (N.D.Ill.1997) (right to contribution for violations of FCRA is matter of federal law; contribution not an available remedy); *Irwin v. Mascott*, 94 F.Supp.2d 1052, 1058 (N.D.Cal.2000) (no express or implied right to contribution or indemnification under Fair Debt Collection Practices Act); *In re: Ameriquest Mortgage Co.*, 2008 U.S. Dist. LEXIS 18314, *11 (N.D. Ill. 2008); *Kudlicki v. MDMA, Inc.*, No. 05-2589, 2006 U.S. Dist. LEXIS 27971, at *3 (N.D. Ill. 2006); *Meyers v. Freedom Credit Union*, No. 05-3526, 2007 U.S. Dist. LEXIS 70032, at *7 (E.D. Pa. 2007). If Plaintiff obtains a judgment in this case, SCA may not seek an offset or contribution based on Plaintiff's settlement with Equifax.

Moreover, counsel for Plaintiff represents to the Court that the settlement agreement with Equifax contains a general dollar amount, no admission of liability by Equifax, no itemization for particular types of damages, and specifically states that the agreement is not to constitute a release by Plaintiff of SCA. If the Court were to provide SCA with a "credit" based on Plaintiff's settlement with Equifax, the release granted to Equifax only by Plaintiff would be broadened by

Court order to constitute a release of SCA. The explicit exclusion of SCA from the release of Equifax negates any contention that the proceeds of Plaintiff's settlement with Equifax "represent common damages arising from a single, indivisiable harm." *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000). Because the "one satisfaction rule" is an equitable doctrine, it should not be applied in an inequitable manner to provide SCA with an unbargained for windfall in this case.

Plaintiff also suffered divisible injuries from those alleged to be caused by Equifax. For instance, Equifax reported false derogatory information from SCA before Plaintiff ever submitted her first credit reporting dispute to Equifax, thereby, in Plaintiff's view, violating 15 U.S.C. § 1681e(b). In contrast, Plaintiff's claims against SCA in Counts Six through Eight of the Complaint only arose after Plaintiff submitted her first credit reporting dispute to Equifax, and SCA failed to comply with 15 U.S.C. § 1681s-2(b) in responding to that dispute.

Accordingly, the "one satisfaction rule" has no application to Plaintiff's existing claims against SCA.[3] Moreover, it is not clear that the "one satisfaction rule" ever applies in FCRA cases. On this point, *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 501 (4th Cir. 2007)[4] is instructive:

> Arguably, the "one satisfaction rule" does not even apply to FCRA claims. *Cf. Ferris v. Haymore,* 967 F.2d 946, 955-58 (4th Cir. 1992) (holding that damages award against defendants under the Motor Vehicle Information and Cost Savings Act, Pub. L. No. 92-513, § 409(a), 86 Stat. 947, 963 (1972) (current version at 49 U.S.C.A. § 32710(a) (West 2007)), cannot be reduced by the amount plaintiff received in settlement from other persons participating in the violation). We need

---

[3] In any event, the "one satisfaction rule" can only apply to SCA when and if Plaintiff obtains a judgment against SCA.

[4] At the final pretrial conference, undersigned counsel inadvertently referred to *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 237 (4th Cir. 2009) instead of *Sloane* in responding to the Court's questioning regarding the availability of damages against SCA in view of the settlement with Equifax. Counsel apologizes to the Court for this mistake.

not reach this question in light of our holding that the injury caused by Equifax is divisible from the other injuries Sloane suffered.

*Id. Sloane* found that "in the case at hand, we cannot find, as a matter of law, that [Plaintiff] has suffered from a 'single, indivisible harm' that has already been redressed by other parties." *Id.* Likewise, in this case, SCA could not possibly establish "an essential requirement for the 'one satisfaction rule,'" i.e. "the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm." *Chisholm*, 205 F.3d at 737. Because Plaintiff asserted varying claims against Equifax and SCA and sought recovery against Equifax for injuries separate from those caused by SCA, there is no way for SCA to establish that the amounts recovered in settlement from Experian represent "common damages arising from a single, indivisible harm." *Id.* Similarly, SCA could never receive "credit" from a settlement with Equifax for punitive damages awarded against SCA because an award of punitive damages would necessarily be based on specific proof of willful violation(s) of the FCRA by SCA.

In two rulings with import for the applicability of the "one satisfaction rule" to Plaintiff's claims against SCA, this Court addressed motions by a remaining defendant to compel Plaintiffs to produce settlement agreements with other defendants in FCRA cases. In *Pennington v. Midland Credit Mgmt., Inc.*, Civil Action No. 1:10-cv-00112-TSE-JFA, ECF No. 65 (E.D. Va. Aug. 9, 2010)[5], the Court reversed an Order granting a motion to compel disclosure of settlement agreements in an FCRA case under Fed. R. Civ. P. 72(a):

> A party seeking discovery must show that the material sought is admissible or "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Fed. R. Civ. P. MCM's principal argument in support of its requests for the settlement agreements is that the agreements may lead to discovery of admissible evidence in light of the "one satisfaction rule," which, MCM argues, limits Pennington to a single recovery for all of the credit errors arising from the 2005 identity theft. *See Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th

---

[5] A copy Order in *Pennington* is attached hereto as **Exhibit J**.

Cir. Va. 2000) ("The essential requirement for the 'one satisfaction rule' is that the amounts recovered by settlement and the judgment must represent common damages arising from a single, individual harm.") Yet, MCM fails to show that the acts and injuries are the same. To the contrary, it appears the acts are separate and the injuries are distinct. In any event, counsel for Pennington has represented that the settlement agreements contain only broad dollar amounts with no itemization for particular types of damages.

> These are net settlement amounts in each agreement to compensate the plaintiff for her actual damages, punitive damages, legal fees, and expenses. It would be impossible to look at those lump sum settlement amounts and determine what amount was attributable to actual damages as opposed to legal fees, costs and potential claims for punitive damages.

(Doc. No. 62). At oral argument, counsel confirmed these representations and noted that the settlement agreements contain no admissions of liability, no breakdown of damages, and no reference to any specific statutory violations. As such, the one satisfaction rule, even assuming its applicability, does not support a conclusion that the agreements are relevant or would lead to the discovery of relevant material.

*Pennington,* ECF No. 65 at *2-3. The decision by Judge Ellis in *Pennington* is directly applicable to potential application of the "one satisfaction rule" to this case. The "one satisfaction rule" does not apply to this case, and even if it were to apply, Plaintiff's settlement with Equifax would provide no impact the amount of damages to be assessed against SCA. As a result, any jury instructions and verdict form in this case will focus solely upon SCA. Plaintiff will neither seek liability against Equifax nor seek to recover any damages caused by any other party besides SCA.

In *Sloane v. Equifax Info. Servs.*, Civil Action No. 1:05-cv-1272-LMB-BRP, ECF No. 218 (E.D. Va. Aug. 22, 2006), after the jury entered its verdict and prior to the submission of the legal fee petition, counsel for Equifax requested copies of all the settlement agreements that the Plaintiff had entered into with the other defendants. Judge Poretz granted the motion and Plaintiff objected. In reviewing the matter, Judge Brinkema overruled Judge Poretz and stated that the agreements need not be provided to opposing counsel on the same grounds relied upon

by the Fourth Circuit concerning the "one satisfaction rule." In that ruling, Judge Brinkema found that the ruling was clearly erroneous or contrary to law. *See also Dahy v. RentGrow, Inc.*, Civil Action No. 1:17-cv-1040-LMB-MSN, ECF No. 44 (E.D. Va. Apr. 6, 2018) (denying defendant's motion to compel discovery of settlement agreement with co-defendant without prejudice).

As recognized by this Court, the "one satisfaction rule" is of doubtful relevance for this case, and the specific facts of this case establish that SCA could not possibly establish "an essential requirement for the 'one satisfaction rule,'" i.e. "the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm." *Chisholm*, 205 F.3d at 737. Accordingly, Plaintiff should be permitted to proceed to a trial on the damages to be awarded against SCA, irrespective of the settlement with Equifax.

**D. Plaintiff is Entitled to a Jury Trial on Damages[6]**

**a. Introduction**

The threshold issue before the Court is an issue of first impression in this jurisdiction. Based on extensive research, it does not appear that the Fourth Circuit or this Court has addressed whether a court should assess damages following the entry of default judgment or whether this is a task that may be assigned to a jury. Cases regarding this issue can be grouped into three categories: (1) those finding that a jury demand pursuant to Rule 38 survives after the entry of default, (2) those finding that a court has discretion to allow a jury to decide damages after the entry of default, and (3) those finding that a plaintiff waives her right to a jury trial if

---

[6] This portion of Plaintiff's memorandum draws heavily on a memorandum filed by counsel for the Plaintiff in *Armeni v. Transunion LLC, Inc.*, No. 3:15-CV-00066, ECF No. 57 (W.D. Va. Nov. 29, 2016). In *Armeni*, the Court held that an FCRA plaintiff had no Seventh Amendment or statutory right to a jury trial after default, but nonetheless decided to empanel a jury based on its inherent authority to do so. 2016 U.S. Dist. LEXIS 166399, at *4-7 (W.D. Va. Dec. 2, 2016).

she requests entry of a default judgment.[7] None of these cases are binding on this Court, but Plaintiff believes the first two groups of cases are better supported and reasoned.

Importantly, Rule 55(b)(2) must be read in conjunction with Rule 38, which provides that the right to a trial by jury "is preserved to the parties inviolate" and a proper jury demand "may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(a), (d). Based on the plain language of Rule 38, many cases have held that a jury demand survives even after the entry of default. *See, e.g., Barber v. Turberville*, 218 F.2d 34, 47 (D.C. Cir. 1954) (determining that, when plaintiff demands a jury trial and subsequently has a default entered, "it is the better practice, if not actually compelled, that the issue as to damages be submitted to the jury.").

Even if the Court disagrees with the Plaintiff's position regarding the interplay between Rule 38 and Rule 55, Rule 55(b)(2) allows the Court to "make referrals" when it needs to determine the amount of damages. Fed. R. Civ. P. 55(b)(2). This language provides the Court with discretion to refer the determination of damages to a jury after an entry of default judgment, and the Court should make such a referral in this case. 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2688 (4th ed., Sept. 2016 Update); *Gill v. Stolow*, 18 F.R.D. 508, 510 (S.D. N.Y. 1955) (explaining that there is "no doubt" that Rule 55(b)(2) provides the Court with discretion to order a jury trial on the issue of damages). Thus, even if Plaintiff does not have *the right* to a jury trial on the issue of damages, the Court may still order a jury trial "in a default situation if it seems to be the best means of assessing damages." *Id*. Here, a jury would be the best means of assessing Plaintiff's damages, many of which are non-economic damages

---

[7] Nearly all of the cases in the third category are distinguishable because they do not consider the interplay between Rule 38 and Rule 55. Moreover, many of these cases do not touch on the second component of the issue, i.e. whether the Court may and should refer the determination of damages to a jury.

such as emotional harm and damages to reputation. *See, e.g., Northrup v. Miles Homes, Inc.,* 204 N.W.2d 850, 860 (Iowa 1973) ("Placing a dollar amount on [mental and emotional harm] is peculiarly a function of the jury.").

Finally, Plaintiff further notes that the jury—not the Court—should determine the amount of punitive damages to be awarded to the Plaintiff. After the jury determines the amount, the Court must then review the amount to determine whether it is constitutionally excessive. It has been long recognized that punitive damages should be determined by a jury and numerous FCRA decisions have refused to depart from this settled principle when confronted with a defendant's argument that punitive damages must be determined by the court due to the "as the court may allow" language in § 1681n. *See, e.g., Northrup v. Hoffman,* 2001 WL 682301 (2nd Cir. June 14, 2001); *Barron v. TransUnion Corp.*, 82 F. Supp. 2d 1288 (M.D. Ala. 2000) (issue of fact for jury). Every FCRA case to directly consider this issue has held that it is the role of the jury to determine punitive damages. *Id.* Moreover, every FCRA trial known to Plaintiff's counsel has submitted the issue of punitive damages to the jury, including multiple punitive damages verdicts affirmed by the Fourth Circuit.[8]

**b. Argument**

**i. A Rule 38 jury demand survives entry of a default judgment**

Rule 38 provides that "[t]he right of trial by jury as declared by the Seventh Amendment

---

[8] *Saunders v. Branch Banking and Trust Co. Of VA*, 526 F.3d 142, 145 (4th Cir. 2008) upholding a jury's punitive damages verdict of $80,000); *Sloane*,510 F.3d at 507 (reducing a jury's $245,000 punitive damages award to $150,000); *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 970 (4th Cir. 1987) (upholding a jury's punitive damages verdict of $10,000); *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1262 (N.D. Ala. 2011) (explaining that the jury's punitive damages award of $623,180.00 was not "grossly excessive"); *Dixon-Rollins v. Experian Info. Sols., Inc.*, 2010 WL 3749454, at *1 (E.D. Pa. Sept. 23, 2010) (reducing the jury's punitive damages verdict from $500,000 to $270,000).

to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38(a) (emphasis added). Rule 38(d) further provides that a party "waives a jury trial unless its demand is properly served" and a proper demand "may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d) (emphasis added). The principles established by Rule 38 must be read in conjunction with Rule 55(b)(2), which provides that the "court may conduct hearings or make referrals— preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to… determine the amount of damages[.]" Fed. R. Civ. P. 55(b)(2).

"As always, the starting point for any issue of statutory interpretation is the language of the statute itself." *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016) (citations and internal quotations omitted). When "the language at issue has a plain and unambiguous meaning with regard to the particular dispute, that meaning controls." *Id.* (internal quotations omitted); *see also Ayes v. U.S. Dep't of Veterans Affairs*, 473 F.3d 104, 111 (4th Cir.2006) (refusing to "venture beyond the confines of the statutory language" because "Congress says in a statute what it means and means in a statute what it says.") (internal quotation marks omitted)).

The unambiguous language of Rule 38 guarantees the right of trial by jury under the Seventh Amendment to be "preserved by the parties inviolate." Fed. R. Civ. P. 38(a). It strains credulity to believe that Federal Rules of Civil Procedure expressly used the term "inviolate" and stated that a jury demand may only be withdrawn by consent, yet meant something different once default was entered against a defendant. Such an interpretation has no foundation in the plain language of Rule 38 or when viewing the language of the Federal Rules of Civil Procedure as a whole. A contrary interpretation would also lead to an absurd result as it would allow a

defendant to capitalize on defaulting while at the same time inflicting serious prejudice on an inculpable plaintiff.

Several cases to consider this issue have held that a Rule 38 jury demand survives entry of default. For example, in *Mitchell v. The Board of Cty. Comm'rs of the Cty. of Santa Fe*, the plaintiff obtained a default judgment and subsequently attempted to unilaterally withdraw his request for a jury demand. Civil Action No. 05-1155 JB/LAM, 2007 U.S. Dist. LEXIS 55674, at *1-2 (D.N.M. May 9, 2007). After holding a hearing on damages, the Court determined that it was unable to enter an order regarding damages because Rule 38(d) prohibited the plaintiff from unilaterally withdrawing the jury demand from his complaint. *Id.* at *11-13. Relying on the plain language of Rule 38, the court concluded that Rule 38(d) required the defendant's consent to withdraw the plaintiff's jury demand even after the entry of a default judgment. *Id.* at *12. Accordingly, the court ordered the plaintiff to acquire the defendant's consent for the withdrawal or empanel a jury for a hearing on damages. *Id.*

*Mitchell* is one of several cases to determine that a Rule 38 jury demand survives after entry of a default judgment. *See also Abernathy v. Church of God*, No. 4:11-CV-2761-VEH, 2013 U.S. Dist. LEXIS 72433, at *4 (N.D. Ala. May 22, 2013) (explaining that after a default is entered "if the plaintiff has demanded a jury trial…consistent with Rule 38 of the Federal Rules of Civil Procedure…the better practice is to empanel a jury for determining damages as 'a proper demand may be withdrawn only if the parties consent'" (internal citation omitted); *Zero Down Supply Chain Sols., Inc. v. Glob. Transp. Sols., Inc.*, 282 F.R.D. 604, 606 (D. Utah 2012) ("But the plain language of Rule 38(d) suggests that one party may not unilaterally withdraw its request for a jury trial if the other party does not consent. And nothing in the language of this rule implies that the non-consenting party loses its right to a jury trial

simply because it is in default."); *Ault v. Baker*, 2013 WL 1247647, at *10 (E.D. Ark. Mar. 27, 2013) (granting a request for a jury trial on damages after entry of a default judgment and acknowledging "[s]everal cases have held that the protection of Rule 38(d) is extended to the defendant after the entry of default, when Rule 55(b)(2) requires a determination of damages.") (citing *Kormes v. Weis, Voisin & Co., Inc.,* 61 F.R.D. 608, 610 (E.D. Pa. 1974); *Bass v. Hoagland,* 172 F.2d 205 (5th Cir.1949)). *But see* 2016 U.S. Dist. LEXIS 166399, at *4-5 (stating that "the overwhelming weight of authority instructs that the Seventh Amendment does not guarantee a jury trial after default" and holding that the FCRA did not guarantee a right to a jury trial).

### ii. The Court may refer the damages question to a jury

Even if the Court disagrees with Plaintiff's position regarding Rule 38, the Court *may* refer the determination of damages to a jury because Rule 55(b)(2) allows the Court to "make referrals" when it needs to determine the amount of damages. Fed. R. Civ. P. 55(b)(2). Cases and commentators alike have recognized that there is "no doubt" that Rule 55(b)(2) provides the Court with discretion to order a jury trial on the issue of damages. *Gill*, 18 F.R.D. at 510; 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2688 (4th ed., Sept. 2016 Update); *see also Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967) (affirming a district court's decision where the issue of damages was submitted to a special master after entry of a default judgment). As the Court of Appeals for the D.C. Circuit observed "it is the better practice, if not actually compelled, that the issue as to damages be submitted to the jury" after entry of a default judgment. *Barber*, 218 F.2d at 47; *see also Hutton v. Fisher*, 359 F.2d 913, 916 (3d Cir. 1966) ("While the provisions of Rules 38 and 39… are not expressly made applicable to default situations in which the issue of damages must

be tried, we think the requirements of notice or consent stated in those rules should in fairness and logic be applied to cases of the present type.").

A jury would be the best means of assessing Plaintiff's damages because many of the categories of damages sought by the Plaintiff are non-economic damages such as emotional harm and damages to reputation. Placing a dollar amount on Plaintiff's emotional harm is a task well suited for a jury who can provide a more representative perspective of the proper amount of damages suffered by the Plaintiff. *Northrup*, 204 N.W.2d at 860 ("Placing a dollar amount on [mental and emotional harm] is peculiarly a function of the jury."); *Gray v. Fla. Dep't of Juvenile Justice*, No. 3:06-cv-990-J-20MCR, 2007 U.S. Dist. LEXIS 6649, at *5 (M.D. Fla. Jan. 30, 2007) ("compensatory damages for emotional distress may not be susceptible to computation and thus, it is within the jurors ability to determine a reasonable amount."). Given the complexities in assessing a dollar amount for emotional and reputational harms, the task of assigning an amount is better suited to the opinions of *multiple* individuals who may bring different opinions and insights as to the value of the issues at stake in this litigation. Assigning the task to multiple individuals inherently reduces the risk of bias and ensures that the amount awarded is more representative. Accordingly, even if the Plaintiff does not have the right to a jury trial after entry of a default judgment, the Court should exercise its discretion in this instance because a jury would be the best means of assessing Plaintiff's damages, many of which are non-economic damages not susceptible to computation.

### iii. The jury should determine the punitive damages, subject to the Court's review

Finally, Plaintiff notes that the jury should be assigned with the task of determining the amount of punitive damages to be awarded to the Plaintiff. In every FCRA trial known to

Plaintiff's counsel, the Court has submitted the issue of punitive damages to the jury.[9] *Saunders*, 526 F.3d 142 at 145; *Sloane*, 510 F.3d at 507; *Brim*, 795 F. Supp. 2d 1255 at 1262 (N.D. Ala. 2011); *Dixon-Rollins*, 2010 WL 3749454, at *1.[10]

Consistent with the unbroken line of cases on this issue, the Court should first submit the issue of punitive damages to the jury.[11] The Court may then exercise its duty to review any award of punitive damages for excessiveness.

## CONCLUSION

Plaintiff respectfully requests that this Court grant her Motion for Default Judgment as to Liability Against SCA (ECF No. 11) and set this case for a trial by jury as to the amount of damages to be awarded against SCA.

Respectfully submitted,

**DAWN ADAMS**

By_____/s/ Drew D. Sarrett_____
                              Counsel

---

[9] Admittedly, these cases involved a trial on the merits with no defaulting defendant.

[10] *See also Mullins v. Equifax Info. Servs., Inc.,* 2007 U.S. Dist. LEXIS 62912 (E.D. Va. Aug. 27, 2007) (jury verdict upheld $20,000 in actual damages and $100,000 in punitive damages); *Boris v. ChoicePoint Servs., Inc.*, 249 F.Supp.2d 851, (W.D. Ky. 2003) (finding jury's $250,000 punitive damages award was not excessive); *Drew v. Equifax Info. Services*, LLC, C 07-00726 SI, 2010 WL 5022466 (N.D. Cal. Dec. 3, 2010) (No remittitur of $700,000 punitive damage award);*Thomas v. Trans Union*, No. 3:00-cv-1150 (D. Or. Jan. 29, 2003) ($5 million for punitive damages, remitted to $1 million); *Miller v. Equifax Info. Servs., LLC.*, 2014 WL 2123560, at *1 (D. Or. May 20, 2014).

[11] Similarly, courts deciding non-FCRA cases have recognized that the determination of punitive damages historically has been a matter for the jury. *See, e.g., Hartford Fire Ins. Co. v. First Nat'l Bank of Atmore*, 198 F. Supp. 2d 1308 (S.D. Ala. 2002) (insured had right to jury trial as to amount of punitive damages on its claim against insurer for bad faith); *Todd v. Roadway Express Inc.*, 178 F. Supp. 2d 1244 (M.D. Ala. 2001) (it is the function of the jury to determine the amount of punitive damages once it has determined that an award of punitive damages is proper and the role of the court, whether trial or appellate, to determine whether the jury has set an amount which is constitutionally excessive).

Drew D. Sarrett (VSB No. 81658)
The Sarrett Law Firm, PLLC
8100 Three Chopt Road, Suite 203
Richmond, Virginia 23229
Phone: (804) 303-1951
Fax: (804) 250-6005
E-mail: drew@sarrettlawfirm.com
*Counsel for Plaintiff(s)*

## CERTIFICATE OF SERVICE

I, Drew D. Sarrett, counsel for Dawn Adams, certify that on September 17, 2018, I sent a

copy of the foregoing (with exhibits) by Priority Mail, postage pre-paid to the following:

Applied Business Services, Inc.
d/b/a Security Collection Agency
P.O. Box 1110
Edenton, North Carolina 27932

/s/ Drew D. Sarrett
Drew D. Sarrett